**EXHIBIT 1**

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D. C.



IN RE APPLICATION OF THE
FEDERAL BUREAU OF INVESTIGATION FOR
AN ORDER REQUIRING THE PRODUCTION
OF TANGIBLE THINGS

Docket Number: BR 14-01

## MOTION FOR SECOND AMENDMENT TO PRIMARY ORDER

The United States of America, hereby moves this Court, pursuant to the Foreign

Intelligence Surveillance Act of 1978 (the "Act"), Title 50, United States Code (U.S.C.), §

1861, as amended, for an amendment to the Primary Order issued in the

above-captioned docket number.  Specifically, the Government requests that Section (3)E

of the Court's Primary Order be amended to authorize the preservation and/or storage

of certain call detail records or "telephony metadata" (hereinafter "BR metadata")

beyond five years (60 months) after its initial collection under strict conditions and for

the limited purpose of allowing the Government to comply with its preservation

obligations, described below, arising as a result of the filing of several civil lawsuits

challenging the legality of the National Security Agency (NSA) Section 215 bulk

telephony metadata collection program.

As detailed below, several plaintiffs have filed civil lawsuits in several United

States District Courts challenging, among other things, the legality of the Government's

receipt of BR metadata from certain telecommunications service providers in response to

production orders issued by this Court under Section 215.  While the Court's Primary

Order requires destruction of the BR metadata no later than five years (60 months) after its initial collection, such destruction could be inconsistent with the Government's preservation obligations in connection with civil litigation pending against it. Accordingly, to avoid the destruction of the BR metadata, the Government seeks an amendment to the Court's Primary Order that would allow the NSA to preserve and/or store the BR metadata for non-analytic purposes until relieved of its preservation obligations, or until further order of this Court under the conditions described below.

1. Upon consideration of the Application by the United States, on January 3, 2014, the Honorable Thomas F. Hogan of this Court issued orders in the above-captioned docket number requiring the production to the NSA of certain BR metadata created by certain specified telecommunications providers. That authority expires on March 28, 2014, at 5:00 p.m. Eastern Time. On February 5, 2014, this Court issued an order granting the Government's motion for amendment to the Primary Order to modify certain applicable minimization procedures.[1] The application in docket number BR 14-01, including all exhibits and the resulting orders, as well as the Government's motion and the Court's February 5, 2014 Order, are incorporated herein by reference.

---

[1] The minimization procedures were modified to require the Government, by motion, to first obtain the Court's approval to use specific selection terms to query the BR metadata for purposes of obtaining foreign intelligence information, except in cases of emergency, and to restrict queries of the BR metadata to return only that metadata within two "hops" of an approved seed.

2

2. The Primary Order in the above-captioned docket number, as amended, requires NSA to strictly adhere to the enumerated minimization procedures. Among the minimization procedures is subparagraph (3)E, which requires that "BR metadata be destroyed no later than five years (60 months) after its initial collection." The Court's February 5, 2014 Order granting the Government's motion to amend the Primary Order does not relieve the NSA of this destruction requirement.

3. The Government moves this Court for an amendment to the Primary Order in docket number BR 14-01, as amended, that would allow the NSA to preserve and/or store the BR metadata for non-analytic purposes until relieved of its preservation obligations or until further order of this Court under the conditions described below.

## I. Background Concerning Pending Civil Litigation

4. Over the course of the last several months certain plaintiffs have filed civil actions against various government agencies and officials challenging the legality of the NSA bulk telephony metadata collection program as authorized by the Court under Section 215. The following matters, currently pending either before a United States District Court, or United States Court of Appeals, are among those in which a challenge to the lawfulness of the Section 215 program have been raised:

(i) *American Civil Liberties Union, et al., v. James R. Clapper, et al*, No. 13-cv-3994 (WHP) (S.D.N.Y.), action challenging the legality of the NSA bulk telephony metadata collection program and seeking, among other things, an injunction permanently

3

enjoining the collection under the program of telephony metadata pertaining to

Plaintiffs' communications, and requiring the Government to purge all of Plaintiffs' call

detail records heretofore acquired. Following dismissal of the Complaint and denial of

Plaintiffs' motion for preliminary injunction in the District Court, Plaintiffs have filed an

appeal to the United States Court of Appeals for the Second Circuit;

(ii) *Klayman, et al., v. Obama, et al.*, Nos. 13-cv-851, 13-cv-881, 14-cv-092 (RJL)

(D.D.C.), actions challenging the legality of the NSA bulk telephony metadata collection

program and seeking, among other things, an injunction during the pendency of the

proceedings barring the Government from collecting metadata pertaining to Plaintiffs'

calls, the destruction of all call detail records of Plaintiffs' calls previously acquired, and

a prohibition on the querying of the collected telephony metadata using any telephone

number or other identifier associated with Plaintiffs. Following the granting (with a stay

of the order pending appeal) of Plaintiffs' motion for preliminary injunction in Docket

Number 13-cv-851, the Government filed an appeal to the United States Court of

Appeals for the District of Columbia Circuit;

(iii) *Smith v. Obama, et al.*, No. 13-cv-00257 (D. Idaho), action challenging the

legality of the NSA bulk telephony metadata collection program, and seeking, among

other things, to permanently enjoin the Government from continuing to acquire BR

metadata of Plaintiff's calls, and the purging of all BR metadata of Plaintiff's calls

heretofore acquired;

4

(iv) *First Unitarian Church of Los Angles, et al., v. National Security Agency, et al.,* No. 3:13-cv-3287 (JSW) (N.D.Cal.), action challenging the legality of the NSA bulk telephony metadata collection program and seeking similar injunctive relief;

(v) *Paul, et al., v. Obama, et al.,* No. 14-cv-0262 (RJL) (D.D.C.) putative class action for declaratory and injunctive relief against the NSA bulk telephony metadata collection program and seeking similar injunctive relief. According to the Complaint, plaintiffs apparently anticipate attempting to ascertain the exact size and identities of the putative class and its members through the Government's acquired BR metadata (although the BR metadata does not contain the substantive content of any communication, as defined by 18 U.S.C. § 2510(8), or the name, address or financial information of a subscriber or customer); and

(vi) *Perez, et al., v. Clapper, et al.,* No. 3:14-cv-0050-KC (W.D. Tx.), *pro se "Bivens* action" challenging the legality of the NSA bulk telephony metadata collection program and seeking monetary damages of $1.[2]

## II.   The Government's Preservation Obligations

5. When litigation is pending against a party (or reasonably anticipated), that party has a duty to preserve--that is, to identify, locate, and maintain--relevant information that may be evidence in the case. *West v. Goodyear Tire & Rubber Co.,* 167 F.3d

---

[2] The Government can neither confirm nor deny whether it has specifically acquired and/or queried and/or obtained query results of BR metadata pertaining to plaintiffs.

776, 779 (2d Cir. 1999). The duty to preserve typically arises from the common-law duty to avoid spoliation of relevant evidence for use at trial; the inherent power of the courts; and court rules governing the imposition of sanctions. *See, e.g., Silvestri v. General Motors,* 271 F.3d 583, 590-91 (4th Cir. 2001) (applying the "federal common law of spoliation"). "Relevant" in this context means relevant for purposes of discovery, *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y. 2004), including information that relates to the claims or defenses of any party, as well as information that is reasonably calculated to lead to the discovery of admissible evidence. *West,* 167 F.3d at 779; *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003). A party may be exposed to a range of sanctions not only for violating a preservation order,[3] but also for failing to produce relevant evidence when ordered to do so because it destroyed information that it had a duty to preserve. *See, e.g., Residential Funding Corp. v. DeGeorge Financial Corp.,*306 F.3d 99, 106-07 (2d Cir. 2002); *Richard Green (Fine Paintings) v. McClendon,* 262 F.R.D. 284, 288 (S.D.N.Y. 2009); *Danis v. USN Communications, Inc.,* 2000 WL 1694325, *1 (N.D. Ill. Oct. 20, 2000) ("fundamental to the duty of production of information is the threshold duty to preserve documents and other information that may be relevant in a case"). *Accord Pipes v. United Parcel Serv., Inc.,* 2009 WL 2214990, *1 n.3 (W.D. La. July 22, 2009).

---

[3] To date, no District Court or Court of Appeals has entered a specific preservation order in any of the civil lawsuits referenced in paragraph 4 above, but a party's duty to preserve arises apart from any specific court order.

6

6. When preservation of information is required, the duty to preserve supersedes statutory or regulatory requirements or records-management policies that would otherwise result in the destruction of the information. *See, e.g., Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (a litigant "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure preservation of relevant documents"). The duty to preserve discoverable information persists throughout the litigation; the responsible party must ensure that all potentially relevant evidence is retained. *Id.* at 432-33; *see also Richard Green (Fine Paintings)*, 262 F.R.D. at 289; *R.F.M.A.S., Inc. v. So*, 2010 WL 3322639, *6 (S.D.N.Y. Aug. 11, 2010).

7. Based upon the issues raised by Plaintiffs in the above-referenced lawsuits and the Government's potential defenses to those claims, the United States must ensure that all potentially relevant evidence is retained which includes the BR metadata obtained in bulk from certain telecommunications service providers pursuant to this Court's production orders. To meet this obligation, the Government seeks an order that would allow the NSA to retain the BR metadata for non-analytic purposes until relieved of its preservation obligations or until further order of this Court under the conditions described below. Based upon the claims raised and the relief sought, a more limited retention of the BR metadata is not possible as there is no way for the Government to know in advance and then segregate and retain only that BR metadata specifically relevant to the identified lawsuits.

7

### III. The Conditions Under Which the BR Metadata will be Retained

8. All BR metadata retained beyond the five-year period specified in Section (3)E of the Court's Primary Order will be preserved and/or stored in a format that precludes any access or use by NSA intelligence analysts for any purpose, including to conduct RAS-approved contact chaining queries of the BR metadata for the purpose of obtaining foreign intelligence information, and subject to the following additional conditions:

(i) NSA technical personnel may access BR metadata only for the purpose of ensuring continued compliance with the Government's preservation obligations to include taking reasonable steps designed to ensure appropriate continued preservation and/or storage, as well as the continued integrity of the BR metadata.

(ii) Should any further accesses to the BR metadata be required for civil litigation purposes, such accesses will occur only following prior written notice specifically describing the nature of and reason for the access, and the approval of this Court.

## IV.    Conclusion

9. In light of the above, the Government respectfully submits that it is

reasonable to extend the retention period for the BR metadata for this very limited

purpose. Congress did not intend FISA or the minimization procedures adopted

pursuant to section 1801(h) to abrogate the rights afforded to defendants in criminal

proceedings.[4] For example, in discussing section 1806, Congress stated,

> [a]t the outset, the committee recognizes that nothing in these subsections
> abrogates the rights afforded a criminal defendant under *Brady v.
> Maryland*, and the Jencks Act. These legal principles inhere in any such
> proceeding and are wholly consistent with the procedures detailed here.
> Furthermore, nothing contained in this section is intended to alter the
> traditional principle that the Government cannot use material at trial
> against a criminal defendant, and then withhold from him such material
> at trial.

H.R. Rep. No. 95-1283, 95th Cong., 2d Sess, pt. 1 at 89 (1978); S. Rep. No. 95-604, 95th

Cong. 2d Sess., pt. 1, at 55-56 (1978). Although the legislative history discussed above

focuses on the use of evidence against a person in criminal proceedings, the Government

respectfully submits that the preservation of evidence in civil proceedings is likewise

consistent with FISA.

By this motion, the Government does not seek to modify any other provision of

the January 3, 2014 Primary Order, as amended by the Court's February 5, 2014 Order.

---

[4] By extension, this should also apply to section 1861(g) which, with respect to retention is
entirely consistent with section 1801(h).

WHEREFORE, the United States of America, through the undersigned attorneys,

moves for an amendment to the Primary Order in docket number BR 14-01 as set forth

above.

Respectfully submitted,

John P. Carlin
Acting Assistant Attorney General
National Security Division

Stuart F. Delery
Assistant Attorney General
Civil Division

U.S. Department of Justice

10

## APPROVAL

I find that the foregoing Motion for Amendment to Primary Order satisfies the

criteria and requirements set forth in the Foreign Intelligence Surveillance Act of 1978, as

amended, and hereby approve its filing with the United States Foreign Intelligence

Surveillance Court.

Date

**Eric H. Holder, Jr.**
Attorney General of the United States

2/25/14

Date

**James M. Cole**
Deputy Attorney General of the United States

11

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D. C.

IN RE APPLICATION OF THE
FEDERAL BUREAU OF INVESTIGATION FOR        Docket Number: BR 14-01
AN ORDER REQUIRING THE PRODUCTION
OF TANGIBLE THINGS

## SECOND AMENDMENT TO PRIMARY ORDER

This matter having come before the Court upon the motion of the United States

seeking an second amendment to this Court's Primary Order in the above-captioned

docket number, which requires the production to the National Security Agency (NSA)

of certain call detail records or "telephony metadata" (hereinafter, "BR metadata")

pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA or the Act), Title 50,

United States Code (U.S.C.), § 1861, as amended, and relying upon and incorporating

the verified application, declaration, and orders issued in the above-captioned docket

number, with full consideration having been given to the matters set forth therein, as

well as the matters set forth in the Government's motion, and it appearing to the Court

that the Government's motion should be granted,

IT IS HEREBY ORDERED that the Government's Motion for Second Amendment

to Primary Order is GRANTED, and

IT IS FURTHER ORDERED that subparagraph (3)E of the Court's Primary Order in the above-captioned docket number is amended to authorize the Government to retain BR metadata off-line beyond five years (60 months) after its initial collection for the purpose of the Government meeting its preservation obligations in civil lawsuits, subject to the following conditions:

(i) all BR metadata retained beyond five-years (60 months) shall be preserved and/or stored in a format that precludes any access or use by NSA intelligence analysts for any purpose, including to conduct RAS-approved contact chaining queries of the BR metadata for the purpose of obtaining foreign intelligence information;

(ii) NSA technical personnel shall access BR metadata retained beyond five-years (60 months) only for the purpose of ensuring continued compliance with the Government's preservation obligations to include taking reasonable steps designed to ensure appropriate continued preservation and/or storage, as well as the continued integrity of the BR metadata; and

(iii) should any further accesses to the BR metadata retained beyond five-years (60 months) be required for civil litigation purposes, such accesses shall occur only following prior written notice specifically describing the nature of and reason for the access, and the approval of this Court.

The Court finds that, as so amended, the minimization procedures contained in

the Primary Order issued in docket number BR 14-01 are consistent with the definition

of "minimization procedures" as set forth by 50 U.S.C. § 1861(g)(2).

IT IS FURTHER ORDERED that all other provisions of the Court's Primary

Order issued in docket number BR 14-01 shall remain in effect.


Signed _____ Eastern Time

            Date            Time


                                    **REGGIE B. WALTON**
                                    Presiding Judge, United States Foreign
                                    Intelligence Surveillance Court

3